IN RE INTEREST OF DAVID METTEER, A CHILD UNDER EIGHTEEN YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, v. JEANNETTE METTEER, APPELLANT.

279 N. W. 2d 374

Filed May 22, 1979. No. 42229.

T. Clement Gaughan, Lancaster County Public Defender, and Dennis G. Carlson, for appellant.

Ronald D. Lahners, Lancaster County Attorney, and Toni G. Thorson, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

This is an appeal from an order of the Separate Juvenile Court of Lancaster County, made on June 12, 1978, terminating the parental rights of Jeannette Metteer as to her son, David, who was born on September 16, 1974. The contentions made in the appellant's first seven assignments of error may be stated as one, i.e., the evidence is insufficient to support the termination order. The eighth assignment relates to the contention that section 43-209, R. S. Supp., 1978, is void and unconstitutional because it is vague. We affirm.

The action out of which this appeal grew commenced on November 19, 1975, with the filing of a petition in the juvenile court under the provisions of section 43-202 (2), R. S. Supp., 1978. The petition alleged David was a child whose health and well-being was endangered in that his mother, Jeannette, had assaulted him and threatened to kill him. The evidence adduced at the adjudication hearing established that the assault and injuries to the child had occurred on October 15, 1975, when the child was 13 months old. It further showed Jeannette was hallucinating at the time of the assault and she believed that David was a lizard from which she had to protect herself. The assault was brought to an end by a third person then on the premises. Jeannette had experienced somewhat similar hallucinations on

other occasions. After the assault the child was removed from the home by the department of welfare and Jeannette was placed under psychiatric care.

On December 30, 1975, after hearing, the court entered an adjudication of neglect, placing David in the protective custody of the court and placing his legal custody in the Lancaster County department of public welfare. Thereafter, until the termination disposition, David resided in foster homes while his mother received a variety of psychiatric care including, at various times, hospitalization, day care, outpatient care, counseling, and medication. During portions of this period, sometimes on a regular and sometimes on an irregular basis, Jeannette exercised the right to visit David and sometimes had physical custody of him on weekends, pursuant to order of the court. The medical diagnosis was that, at the time of the assault, Jeannette was schizophrenic and psychotic. The ultimate diagnosis was schizophrenia, chronic undifferentiated type, meaning that Jeannette was not psychotic any longer, but her psychosis could return, especially during periods of stress.

In December 1976 and January 1977, a review hearing was held at which time the court found that Jeannette did not have the ability to care for David and the situation had not materially changed.

On March 30, 1978, a petition asking termination of the parental rights of Jeannette and of the child's father was filed. Its substance was that David continued to be without parental care because of the mental illness of the mother and there were reasonable grounds to believe the mental condition would continue for a prolonged and indefinite period of time; that Jeannette had been treated for a period of 2½ years since the assault episode with little improvement; and that the father had abandoned the child and his whereabouts were unknown.

Both Jeannette and David were represented by

guardians at litem and counsel throughout all the proceedings. Jeannette's position at the termination hearing was not that she should have custody of the child, but that the current arrangement of foster care and periodic visitations should continue until Jeannette could improve to the point where she might function as a parent. Jeannette did not testify at the termination proceeding. However, a psychiatrist who had examined her at the request of her counsel did testify on her behalf. He confirmed the diagnosis of schizophrenia, residual type, which he said was substantially the same as schizophrenia, chronic undifferentiated type. He admitted Jeannette could not meet the emotional needs of David, but thought the continuation of further therapy and counseling in parenting was worth a try, although he could not say for sure that Jeannette could ever function as a parent. After having called to his attention the types of treatment already administered and Jeannette's lack of motivation, he stated the prospects for change were very remote.

The evidence indicated the father of the child had never seen the boy nor supported him, and that the father's whereabouts were unknown.

We will not summarize the other evidence adduced at the termination hearing as it would serve no useful purpose. It was clearly sufficient to establish mental illness of the mother of such a degree and scope as to interfere in a very high degree with her ability to function as a parent and to show there was little or no prospect of improvement, in part because she could not or would not recognize she had a severe problem.

The court announced prior to making any determination that it would require clear and convincing proof of the allegations in the petition. Applying that standard, the evidence supported the judgment.

We now examine the claim that section 43-209, R. S. Supp., 1978, is void for vagueness. The appel-

lant's position is founded upon the following premises and reasoning. The integrity of the family unit, in this instance the continuing legal and social relationship of parent and minor child, is one of the fundamental rights guaranteed by the Constitution of the United States. Stanley v. Illinois, 405 U. S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551. A state, therefore, may not authorize the termination of that relationship absent a showing of a compelling state interest. Section 43-209, R. S. Supp., 1978, does not describe a compelling state interest and is so nonspecific in its requirements that it leaves determination of basic policy to those who must enforce the law, viz, policemen, welfare officers, prosecutors, and judges, and so denies the mother substantive due process. Some of the authorities which the appellant cites and relies upon are Grayned v. City of Rockford, 408 U. S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222; Alsager v. District Court of Polk Cty., Iowa, 406 F. Supp. 10 (S. D. Iowa, 1975); Smith v. Goguen, 415 U. S. 566, 94 S. Ct. 1242, 39 L. Ed. 2d 605.

Section 43-202, R. S. Supp., 1978, grants the juvenile court jurisdiction in the case, among others, of "any child under the age of eighteen years . . . (e) who is in a situation . . . dangerous to life or limb. . . ." Section 43-209, R. S. Supp., 1978, provides in part that the court may terminate parental rights when such action is in the best interests of the child and "one or more of the following conditions exist: . . . (5) The parents are unable to discharge parental responsibilities because of mental illness or mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period; or (6) Following upon a determination [of neglect or dependency] . . . , reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination."

The appellant contends that terms contained in

sections 43-202 and 43-209, R. S. Supp., 1978, such as "may," "parental responsibilities," "reasonable efforts," and "proper parental care," are insufficiently defined, do not give the parent adequate notice of what is required, and leave too much discretion in the enforcers of the law, and are on that account void.

We do not accept the appellant's contentions. Section 43-202, R. S. Supp., 1978, taken as a whole, defines "parental responsibilities" and "proper parental care" in general terms. These include providing a home, support, subsistence, education, and other care necessary for the health, morals, and well-being of the child. It commands special care for the children in special need because of mental condition. It commands that the child not be placed in situations dangerous to life or limb, and not be permitted to engage in activities injurious to his health or morals.

Section 43-209 (2), R. S. Supp., 1978, authorizes termination of parental rights not for merely slight or infrequent violations of parental responsibilities, but only for substantial and continuous or repeated neglect of the necessary care and protection. It further provides that when such neglect or prohibited conduct is the consequence of mental illness or deficiency and the condition is likely to continue for a prolonged and indeterminate period of time, then, under section 43-209 (5), R. S. Supp., 1978, the court may terminate the parental rights.

The argument of the appellant, carried to its logical extreme, would require that in order for a statute to meet constitutional standards it must contain a precise checklist of parental responsibilities as well as a list of prohibitions. Society does not operate in a historical, social, or moral vacuum. The terms used in the statute, while broad, must be interpreted in the light of our history, culture, generally accepted standards of morality, and the common

understanding of the behavior of reasonably conscientious and well-intentioned parents.

The following principles are applicable. The constitutional requirement that statutory language must be reasonably certain or be held void for vagueness is satisfied by the use of ordinary terms which find adequate interpretation in common usage and understanding. Horn v. Burns and Roe, 536 F. 2d 251 (8th Cir., 1976). Statutes are sufficiently definite when they use terminology which is commonly grasped. United States v. Maude, 481 F. 2d 1062 (D. C. Cir., 1973), see especially cases cited in footnote 45, p. 1068. Sections 43-202 and 43-209, R. S. Supp., 1978, meet these requirements.

Appellant's attack upon the vagueness of the word "may" is particularly interesting. The argument is not developed, but the inference apparently is that this word leaves some discretion in the court as to whether or not parental rights may be terminated and results in an unlawful and arbitrary delegation of power, particularly when that discretion coexists with the general language defining parental responsibilities and prohibited conduct. If this argument were to be accepted, then, of course, the cure is a precise checklist and mandatory termination. It would seem to us that such specificity would be more destructive of family integrity than any reasonable application of the statute. The word "may" in the statute is designed to allow the judge to weigh each individual case in the light of the degree of seriousness of the conduct, its effect upon the best interests of the child, the likelihood of continuation, and the results of attempted corrective measures, and then to determine whether or not parental rights must be terminated. Such discretion is not constitutionally impermissible.

There is no doubt that among the fundamental rights retained by the people under Article IX of the Bill of Rights of the Constitution of the United States

is that of integrity of the family. Stanley v. Illinois, *supra;* Meyer v. Nebraska, 262 U. S. 390, 43 S. Ct. 625, 67 L. Ed. 1042; Pierce v. Society of Sisters, 268 U. S. 510, 45 S. Ct. 571, 69 L. Ed. 1070. It also seems clear to us that the integrity of the family unit depends upon the protection of its individual members from abuse and neglect. Clearly the State has a compelling interest in protecting minor children from serious abuse and serious neglect and that interest may be implemented by statutes such as sections 43-202 and 43-209, R. S. Supp., 1978.

In its judgment the court said: "For over a period of more than two years following upon a determination of neglect by this Court, reasonable efforts under the direction of the Court have failed to correct the conditions leading to the determination of neglect. Jeannette Metteer is unable to discharge parental responsibility because of her mental illness and there are reasonable grounds to believe that such condition will last a prolonged indeterminate period of time. Jeannette Metteer suffers from schizophrenia, chronic undifferentiated type with episodic paranoid trends for which she has been treated since November, 1975, with little change or improvement and said mental condition makes her incapable of providing care for the above named child. Grounds exist for termination of the parental rights of Jeannette Metteer under the provisions of Section 43-209 (5) and (6)," R. S. Supp., 1978. Those conclusions are supported by clear and convincing evidence.

AFFIRMED.