In re Interest of Lee Holley, a child under 18 years of age.
State of Nebraska, appellee, v.
Harold Holley et al., appellants.
In re Interest of Jennifer Holley, a child under 18 years of age.
State of Nebraska, appellee, v.
Harold Holley et al., appellants.

308 N.W.2d 341

Filed July 10, 1981. Nos. 43649, 43650.

Dennis R. Keefe, Lancaster County Public Defender, and Marie Ashe for appellants.

Ron Lahners, Lancaster County Attorney, and Richard J. Hautzinger for appellee.

Darrell K. Stock, guardian ad litem.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

This is an appeal from the separate juvenile court of Lancaster County from an order terminating the parental rights of the appellants, Ann and Harold Holley, in their children, Lee and Jennifer Holley. The termination order was entered May 28, 1980, pursuant to the provisions of Neb. Rev. Stat. § 43-209(5) (Reissue 1978). After trial, the court found that both Ann and Harold Holley were unable to discharge their parental responsibilities because of mental illness in the case of Ann, and mental deficiency in the case of Harold, and that in the case of both appellants such conditions would continue for a prolonged and indeterminate period. Appellants' motions for new trial were overruled and they have perfected this appeal. They assign as error: (1) That the trial court erred in overruling their motion to dismiss; and (2) That the trial court erred in failing to find § 43-209 constitutionally defective by its claimed failure to require the showing of a compelling state interest to justify termination, and by its claimed failure to require that the State pursue the least restrictive alternative means to achieve the compelling state interest.

The older child, Lee Holley, was born on July 20, 1977. On July 22, 1977, an amended petition was filed

alleging that Lee Holley was without proper parental care and support through no fault of his parents, in that the parents of the child are emotionally unstable and unable to provide proper care for the child. The amended petition alleged that while still in the hospital the mother was heard to state that she did not care if the baby died and that the father had put a blanket over the face of the child while visiting and stated "let him suffocate." After a hearing on this amended petition on July 28, 1977, the trial court ordered the custody of Lee placed with Ethel Louise Paul, paternal grandmother of the child. An adjudication hearing was held on August 9, 1977. Evidence adduced at this hearing indicated that Ann Holley suffered from hallucinations and delusions, had been hospitalized for severe emotional problems three times in the 2½ years preceding the hearing, and was not personally able to assume responsibility for the child's care. Other evidence at this hearing indicated that Harold Holley was also emotionally unstable. After this hearing, the trial court found the child to be a dependent child pursuant to Neb. Rev. Stat. § 43-202(1) (Reissue 1978) and ordered Lee placed in the joint custody of the appellants and Ethel Louise Paul, further ordering that a caseworker from the welfare department was to visit the home, supervise the care of Lee, and to see that the appellants were instructed in parenting skills. The appellants and Lee then moved into the home of Ethel Paul and her husband where they remained until January 1978.

In January 1978 appellants moved into their own apartment and the child remained in the home of Ethel Paul. On March 8, 1978, a further dispositional hearing was held at the request of the appellee. At this hearing Ethel Paul testified that she was no longer physically able to care for Lee, and the appellants recommended that Lee be placed with Glen and Sandy Tubbs, cousins of Harold Holley. The testimony of Ann Holley's psychiatrist at this hearing indicated that Ann was still suffering from hallucinations and delusions and that

she was unable to respond well to stress. It was the testimony of the psychiatrist that Ann Holley would not be able to deal appropriately with the child in an emergency situation and that she was not emotionally capable of caring for the child at that time. The psychiatrist's testimony also indicated that Harold Holley was readily overwhelmed, and his mental condition prevented him from reasoning out how to react to stressful situations. Following this hearing, the trial court ordered Lee placed in an approved foster home that could best meet his needs, and he was placed in the home of Sandy and Glen Tubbs. The court at this hearing also ordered that visitation should be arranged for Ann and Harold Holley and that Ann and Harold should continue to correct the conditions of dependency and neglect found to exist if they desired to resume custody of Lee. The appellants were ordered to follow the recommendations of the welfare department caseworker, visit with Lee, obtain counseling with the Lincoln-Lancaster Mental Health Center, and to cooperate with agencies that could teach them proper child care.

On October 16, 1978, a daughter, Jennifer, was born to the appellants. Appellants immediately signed a voluntary foster-care agreement to place Jennifer in foster care. The child, Jennifer, was placed in the home of Bob and Sandy Rosecrans and visitations were arranged. On January 3, 1979, a petition was filed with the juvenile court of Lancaster County requesting an adjudication and alleging that Jennifer was without proper parental care and support through no fault of the parents due to the voluntary foster placement. At a hearing on this petition on January 10, 1979, the court found that Jennifer was a dependent child within the meaning of § 43-202(1) and that temporary custody of Jennifer should be placed with the Lancaster County Division of Public Welfare.

On August 10, 1979, appellee filed supplemental petitions with regard to both Lee and Jennifer request-

ing that the appellants' parental rights in the children be terminated. The petitions alleged that the parents were unable to care for the children even after months of instruction by workers from the Lancaster County Division of Public Welfare; that the parents were mentally and emotionally incapable of assuming the responsibility of caring for the children; that they were unable to discharge parental responsibilities because of mental illness or mental defects; and that the conditions would continue for a prolonged, indeterminate period. After numerous continuations, the termination hearing was held on May 21, 1980. The evidence adduced at this hearing indicated that the emotional and mental problems of Ann Holley had not improved. Her psychiatrist, Dr. J. Boman Bastani, testified that stress would accelerate Ann Holley's illness and that she was in no position to handle the stress of parenting due to her mental illness. Testimony at this hearing indicated that Harold Holley was 100 percent physically disabled by an arthritic condition which will not improve and will probably worsen. Testimony by an orthopedist, Dr. Harold R. Horn, indicated that Harold's disability was such that he could not respond if the child was in danger. Psychiatric and intellectual evaluations of Harold indicated that he is mildly mentally retarded and is functioning at around the fifth grade level, emotionally and intellectually.

Dr. Robert G. Osborne, a psychiatrist, testified that Harold's concept of parenting was analogous to that of a child playing house and that he demonstrated a lack of continuity and consistency in caring for the children. Dr. Osborne testified that it was his opinion that Harold Holley would be unable to teach the children the necessary social skills and that his inability would be lifelong.

At this hearing, the most damaging testimony came from Scott Kerl, a caseworker with the Lancaster County Division of Public Welfare, from Carol Christopher of Child Protective Services, Margaret Reid, a social service worker, and Janis Houfek of

Homemakers' Services from the division of public welfare. These witnesses testified that the Holleys had been extremely uncooperative with all the services offered by the division of public welfare and had made very little progress in basic parenting skills such as feeding and changing the children. The evidence at this hearing further indicated that the parents were unable or unwilling to discipline the children, particularly in dangerous situations such as playing with electrical cords or playing near a fan. There was evidence from several witnesses that on many of the visits when the Holley children were brought to the Holleys' apartment to visit them, Harold Holley refused to get out of bed and come out into the living room and visit with the children. There was also testimony that the children were frightened of Harold and Ann and that there were no demonstrations of affection running from the children to their parents. Following this hearing, the trial court found that the best interests of the children, Lee and Jennifer, required termination of the appellants' parental rights. We affirm.

We will first consider appellants' assignment of error that § 43-209 is unconstitutional. Appellants first argue that their right to due process is violated by that statute in that it fails to require a compelling state interest to justify termination of parental rights. Appellants rely heavily on the case of *Alsager v. District Court of Polk Cty., Iowa*, 406 F. Supp. 10 (S.D. Iowa 1975), in which the U.S. District Court for the Southern District of Iowa held that "to sustain its compelling interest burden, the state must show that the consequences, in harm to the children, of allowing the parent-child relationship to continue are more severe than the consequences of termination." *Id.* at 23. Appellants' argument is that by not requiring a showing of actual or imminent harm to the child before termination of parental rights may take place, § 43-209 does not require a compelling state interest to be shown before parental rights may be terminated.

We note that the circumstances of this case are greatly different than those which were present in the *Alsager* case. While the District Court in its opinion in *Alsager* did not marshal the evidence which was presented in the juvenile court, the opinion does set out the Iowa statute under which the parents' rights were terminated. We note that the Iowa statute did not contain a reason for termination similar to subsection (5) of § 43-209 under which appellants' parental rights were terminated. Subsection (5) of the Nebraska statute allows the court to terminate parental rights when it finds that: "The parents are unable to discharge parental responsibilities because of mental illness or mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period." It is plain from the wording of the Nebraska statute, as was noted by the separate juvenile court in its memorandum opinion, that the statute by its terms does not permit termination of parental rights for any mental illness or mental deficiency. The only mental illness or mental deficiency which will suffice to terminate parental rights under this subsection is that which renders the parent unable to discharge parental responsibilities, and it is also necessary that the court find reasonable grounds to believe that the condition will continue for a prolonged, indeterminate period. Thus, it is plain that the statute ties the mental problems of the parent to the parent's ability to properly raise and care for the child. While the statute does not, as appellants would require, use the magic words "actual or imminent harm to the child," it is neither necessary nor even appropriate that the statute be so worded. The interest of the state, which is protected by this statute, is, as we noted in the case of *State v. Metteer*, 203 Neb. 515, 522, 279 N.W.2d 374, 378 (1979), "protecting minor children from serious abuse and serious neglect . . . ." This manner of wording the interest to be protected makes the interest no less compelling than it would be were the statute worded as

appellants argue it ought to be.

Even assuming for the sake of argument that the statute's literal wording does not state a compelling state interest, the federal court in the *Alsager* case noted that a facially defective statute can be saved by "a state court construction restricting the vague standards to constitutionally permissible bounds." 406 F. Supp. at 19. The construction which was placed on § 43-209(5) by the case of *State v. Metteer, supra,* is such a limiting construction. Therefore, we find that the statute of which appellants complain does protect a compelling state interest and is thus not unconstitutional in that respect.

Appellants next argue that the statute, even if it protects a compelling state interest, is unconstitutional in that it fails to require that the state pursue the least restrictive alternative means to achieve such compelling interest. However, appellants fail to note that the statute in question does not require termination of parental rights when a parent is found to be within subsection (5) of the statute. As we state in *State v. Metteer, supra* at 521, 279 N.W.2d at 378: "The word 'may' in the statute is designed to allow the judge to weigh each individual case in the light of the degree of seriousness of the conduct, its effect upon the best interests of the child, the likelihood of continuation, and the results of attempted corrective measures, and then to determine whether or not parental rights must be terminated. Such discretion is not constitutionally impermissible."

In addition, in *In re Interest of Hill,* 207 Neb. 233, 239, 298 N.W.2d 143, 146 (1980), this court stated that rules governing termination of parental rights "are intended to recognize the integrity of the family and to bring about parental termination only when that appears to be required and no other reasonable alternative exists."

There is nothing in the Nebraska termination statute which prevents a court from devising unique foster care

and visitation arrangements when it finds that such would be in the best interests of the child, as opposed to total termination of parental rights. See Derdeyn, Rogoff, & Williams, *Alternatives to Absolute Termination of Parental Rights After Long-Term Foster Care*, 31 Vanderbilt L. Rev. 1165 (1978). While the statute may not set out a "checklist" of alternative arrangements to be attempted in an effort to find the one that best suits the best interests of the child, the *Hill* and *Metteer* cases make it plain that complete termination of parental rights is indeed a last resort and that courts have the discretion to experiment with foster care and visitation arrangements while keeping in mind that there is still a compelling state interest to be protected, and that the best interests of the child may require complete termination of parental rights eventually.

It is clear from the record in this case that the separate juvenile court did terminate appellants' parental rights as a last resort, and that prior to termination that court authorized a variety of experimental situations to assist appellants in gaining the necessary parenting skills which would have allowed them to regain custody of their children. However, the record is replete with evidence that after 2½ to 3 years of intensive instruction, visitation, and mental health counseling, appellants were unable to master even the most basic skills of diapering and feeding the children. In addition, the record demonstrates that the visitations arranged by the social workers between appellants and their children were not successful in terms of developing an affectionate child-parent relationship between the Holleys and their children. The record demonstrates that the children, Lee and Jennifer, were frightened of the Holleys; that many times Harold Holley refused or was unable to get out of bed to visit with the children; that neither Harold nor Ann understood the emotional needs of the children; and that many times the appellants were more interested in visiting with the adults who brought the children to the Holley apartment than

in playing with the children. The record also demonstrates that the appellants were unable to understand the seriousness of certain situations which posed a danger to the children and were unable or unwilling to protect or discipline the children to prevent the occurrence or reoccurrence of such situations. The record is clear that the separate juvenile court then did terminate appellants' parental rights only as a last resort to protect the best interests of the minor children, Lee and Jennifer Holley.

Appellants' final contention is that the trial court erred in finding that it was shown by clear and convincing evidence that termination of appellants' parental rights was in the best interests of the children. As we said in *State v. Logan*, 204 Neb. 204, 281 N.W.2d 753 (1979), on appeal, while this court is free to hear the case de novo on the record, the findings of fact by the juvenile court should be accorded great weight because the juvenile court heard and observed the parties and the witnesses. A review of the record shows that the findings of fact by the trial court were not in error. Appellant Ann Holley suffered from delusions and hallucinations and had been diagnosed as suffering from chronic undifferentiated schizophrenia by more than one psychiatrist. These hallucinations and delusions prevented her from dealing with the real world and prevented her from learning proper parenting skills. The record also shows that appellant Harold Holley was 100 percent physically disabled and, in addition, was functioning at only a fifth or sixth grade level intellectually and was unable to grasp the concepts necessary to be able to raise the children properly. In addition, his physical disabilities would have made it impossible for him to remove the children from dangerous situations in an emergency. The evidence also demonstrated, as the trial court found, that in all probability the parents' mental problems would continue for a prolonged and indefinite period and that it was unlikely they would ever be able to regain custody of their children. Tragi-

cally, we find no evidence in the record which would indicate that it would be in the best interests of the minor children, Lee and Jennifer Holley, to allow the appellants to maintain a "residue of visitation rights" as counsel for the appellants urges.

Therefore, we find that the order of the separate juvenile court of Lancaster County terminating appellants' parental rights to their children, Lee and Jennifer Holley, was correct in all respects, and we affirm that order.

AFFIRMED.