TERESA K. PALMER, APPELLANT, V. GARY R. PALMER, APPELLEE.
545 N.W.2d 751

Filed April 12, 1996.    No. S-94-279.

John J. Respeliers and Thomas K. Harmon, of Respeliers and Harmon, P.C., and Gregory D. Olds for appellant.

No appearance for appellee.

Carolyn R. Wah for amicus curiae Watchtower Bible & Tract Society of New York, Inc.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

This is an appeal from the district court for Sarpy County, which dissolved the marriage of petitioner–appellant mother, Teresa K. Palmer, and respondent–appellee father, Gary R. Palmer, and awarded custody of the parties' minor daughter, Chelsie, to the mother, but placed restrictions on the mother's ability to involve the child in her religious beliefs and activities. The mother appealed to the Nebraska Court of Appeals, claiming that the district court erred in entering a decree restricting her right to direct the religious instruction of her daughter absent a clear and affirmative showing that the child's exposure to the mother's religious beliefs and practices poses an

immediate and substantial threat of harm to the child. We, on our own motion, in order to regulate the caseloads of the two courts, removed the appeal to this court. We now affirm but modify a portion of the decree in order to eliminate certain restrictions placed on the mother that impermissibly violate the Free Exercise Clause found in the First Amendment to the U.S. Constitution and article I, § 4, of the Nebraska Constitution.

## FACTUAL BACKGROUND

The mother began studying to be a Jehovah's Witness in 1981 and was baptized in July 1984. The parties married on October 29, 1982, and their daughter, Chelsie, was born on September 8, 1990. In April 1993, the mother filed a petition for dissolution, and both parties prayed for custody of the minor child, who at the time of the dissolution proceedings was $3^1/_2$ years old.

A trial was held in the district court for Sarpy County. At trial, the mother testified that as part of her religious activities, she attends a total of 5 hours per week of church services, consisting of a 1–hour–45–minute time period each Sunday, a 2–hour meeting on Tuesday evening, and a 1–hour meeting on Thursday evening. The mother also testified that every other Sunday, approximately two Sundays a month, she participates in a 1–hour door–to–door visitation ministry in which she visits people at their homes, distributes literature, and discusses her faith with willing participants. The mother testified that if awarded custody, she would bring Chelsie with her during these activities. Jehovah's Witnesses do not have separate church services for children, and the mother testified that during church services, she brings toys and activity books for her daughter to play with. The father testified that he attends a Catholic church in Papillion, Nebraska, and had taken Chelsie to church with him approximately six times in the few months leading up to the trial. The mother did not object to the father including the child in his religious activities or to the father having the power to authorize a blood transfusion for the child in emergency situations.

Two psychologists and the guardian ad litem testified at trial, but a large majority of the testimony centered on custodial

issues not raised in this appeal. The mother testified that the father did not want Chelsie raised as a Jehovah's Witness, but there was very little testimony regarding the effect of the mother's religious activities and practices on the child. The guardian ad litem testified that she did not think it was appropriate for the mother to take the child on door–to–door calls because "it's boring" and the "weather can either be hot or cold," and recommended that the mother be refrained from taking Chelsie on these calls until Chelsie was approximately 10 years old. In regard to the weekly services, the guardian ad litem stated:

> Chelsie is required to sit in church with her mother for a two and three–hour period of time for the services. I never could have kept my kids quiet or been able to enjoy the service myself had I had them with me for that long a period of time. I think that's too long for youngsters. They don't understand those sermons, they're way over their head.

And later, referring to the weekly services, the guardian ad litem testified, "I think that's too much religion for a three–year or four–year–old or a five–year–old."

The district court ruled that the best interests of Chelsie were that she be placed in the custody of the mother. The father was granted visitation on Tuesday and Thursday evenings, every other Sunday all day, and every Sunday in the afternoon. However, based on the above testimony, the district court placed the following restrictions on custody and visitation in paragraph 7 of the decree:

> (c) Petitioner shall not take the minor child with her on door–to–door visitation until the minor child reaches age seven;
>
> (d) Neither party shall require the minor child to sit in a regular church service until age seven, however, said child may attend religious education for children age–appropriate.

The mother challenges these restrictions.

## STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although this court reviews these cases de novo on the record, the trial court's determination will normally be affirmed in the absence of an abuse of discretion. *Sullivan v. Sullivan, ante* p. 573, 544 N.W.2d 354 (1996); *Smith–Helstrom v. Yonker, ante* p. 449, 544 N.W.2d 93 (1996). The same standard of review applies to visitation determinations by the trial court. *Evenson v. Evenson,* 248 Neb. 719, 538 N.W.2d 746 (1995).

## ANALYSIS

The First Amendment to the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." This prohibition applies to states by virtue of the 14th Amendment to the U.S. Constitution and to judicial as well as legislative functions. *N.A.A.C.P. v. Alabama,* 357 U.S. 449, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958); *Shelley v. Kraemer,* 334 U.S. 1, 68 S. Ct. 836, 92 L. Ed. 1161 (1948); *Cantwell v. Connecticut,* 310 U.S. 296, 60 S. Ct. 900, 84 L. Ed. 1213 (1940). See, also, *LeDoux v. LeDoux,* 234 Neb. 479, 452 N.W.2d 1 (1990). Similarly, the Nebraska Constitution also protects religious freedom and prohibits interference therewith. Neb. Const. art. I, § 4. In the present case, the state is acting through the trial judge; thus, the actions of the trial judge qualify as governmental action governed by the Free Exercise Clause.

In order to invoke the Free Exercise Clause, the claimant must show that his or her sincerely held religious practices are burdened by the governmental action. *Thomas v. Review Bd., Ind. Empl. Sec. Div.,* 450 U.S. 707, 101 S. Ct. 1425, 67 L. Ed. 2d 624 (1981). A burden upon religion exists where the state, or agent thereof, "conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs . . . ." 450 U.S. at 717–18. There is no question that the religious beliefs of the

mother are sincerely held. Further, it is clear that the beliefs and practices of the mother are burdened in the sense that an important benefit, full custody and parental training of her child, is limited by restrictions on her ability to include Chelsie in her religious practices, i.e., the custodial mother is prevented from including Chelsie in her door–to–door ministry, and she is prevented from taking Chelsie to regular adult religious services until the child reaches age 7. Thus, the Free Exercise Clause is clearly invoked in this case.

The inquiry does not end here, however, as a state may abridge religious practices upon a demonstration that some compelling state interest outweighs a complainant's interests in religious freedom. *LeDoux v. LeDoux, supra* (citing *Sherbert v. Verner,* 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963). See, also, 42 U.S.C. § 2000bb (1994) (Religious Freedom Restoration Act restoring compelling state interest test after *Employment Div., Ore. Dept. of Human Res. v. Smith,* 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990)). In the present case, the state interest implicated by the order of the district court was protection of the best interests of the child. This court has previously held that while a court has a duty to consider whether the religious beliefs of a parent threaten a child's best interests, a court may not restrict a parent's fundamental right to control the religious upbringing of a child absent a showing that particular religious practices " 'pose an immediate and substantial threat to a child's temporal well–being.' " *Peterson v. Peterson,* 239 Neb. 113, 126, 474 N.W.2d 862, 871 (1991); *LeDoux v. LeDoux, supra.* See, also, *Von Tersch v. Von Tersch,* 235 Neb. 263, 455 N.W.2d 130 (1990).

In *Von Tersch v. Von Tersch, supra,* this court reviewed a divorce decree in which the district court ordered that the custodial parent remove the minor children from a Christian school and place the children in a public school. The Christian school was exempt from state accreditation standards and not all of the teachers at the school were state certified.

In support of the proposition that the trial judge did not abuse his discretion in ordering the placement of the children in a public school, the noncustodial parent presented the trial

testimony of a psychologist who performed a custody evaluation. The psychologist testified that the lack of supplemental courses and strong emphasis on basics at the Christian school " 'generates a sense of awkwardness and potential vulnerability for the children.' " *Id.* at 267, 455 N.W.2d at 133. This court concluded that given the fact that the noncustodial parent's objections to the Christian school were not religiously based, but, rather, were based on the adequacy of the education provided, the primary issue in *Von Tersch* concerned a custodial parent's right to control the education of a child. However, in reviewing the decision of the trial judge, we stated in *Von Tersch* that "a state cannot interfere with a parent's liberty interest to direct the upbringing of the parent's child or children, including educational and religious instruction, in the absence of jeopardy to the child's health, safety, or significant social concerns." *Id.* at 269, 455 N.W.2d at 134. This court also reaffirmed the proposition that a custodial parent in a marital dissolution proceeding "normally has the right to control the religious training of a child legally affected by the proceeding unless there is a demonstrated serious threat to the health or well-being of the child." *Id.* at 272, 455 N.W.2d at 136.

In *Von Tersch*, we found that neither the testimony of the psychologist nor any other evidence in the record demonstrated that the Christian school presented any harm to the children's physical or mental health or well-being. We, therefore, held in *Von Tersch* that the trial judge abused his discretion in ordering that the children be removed from the Christian school and placed in a public school.

Similar to *Von Tersch v. Von Tersch, supra*, in this case, there exists insufficient evidence that attendance at the church services poses an immediate and substantial threat to the mental or physical health or well-being of the child. The only testimony which supports the restrictions imposed by the district judge is the testimony of the guardian ad litem as to her opinion that the child would be bored and unruly during extended religious services. Even accepting that testimony at face value, the child has visitation with her father during 3 hours of church services on Tuesday and Thursday evenings, and every other

Sunday all day. There is no evidence in the record that the child was manifestly fearful of either parent or was suffering from any tangible mental stress from attending the Jehovah's Witnesses services or participating in the door–to–door ministry. There is no evidence or even allegation of a threat of physical harm to the child caused by such activities. In fact, the mother testified that attendance and participation in the religious activities of both parents would be healthy for Chelsie and provide a basis for the child to determine which religion she would prefer when she reaches a sufficient age of understanding.

By all indications of the psychologists' evaluations, Chelsie is a happy, well–adjusted child. There has been no showing that the compelling end of the best interests of the child would be served by the restrictions imposed in this case. We, therefore, hold that the district court abused its discretion in placing limitations on the custodial mother's right to control the religious upbringing of her minor child in violation of the Free Exercise Clause found in the First Amendment to the U.S. Constitution and article I, § 4, of the Nebraska Constitution. The following restrictions are ordered to be stricken from paragraph 7 of the decree of dissolution:

(c) Petitioner shall not take the minor child with her on door–to–door visitation until the minor child reaches age seven;

(d) Neither party shall require the minor child to sit in a regular church service until age seven, however, said child may attend religious education for children age–appropriate.

## JUDGMENT

Accordingly, paragraph 7 of the decree of dissolution is modified as set forth above, and the remainder of the decree is affirmed in all other respects.

AFFIRMED AS MODIFIED.

FAHRNBRUCH, J., concurs.