758 N.W.2d 10 (2008)
276 Neb. 825
In re INTEREST OF Joel ANAYA, a child under 18 years of age.
State of Nebraska, Appellee,
v.
Josue Anaya and Mary Anaya, Appellants.
No. S-07-1136.
Supreme Court of Nebraska.
December 5, 2008.
*14 Jefferson Downing and Joel Bacon, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., Lincoln, for appellants.
Donald W. Kleine, Douglas County Attorney, and Nicole Brundo Goaley, for appellee.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and SIEVERS, Judge.
MILLER-LERMAN, J.

NATURE OF CASE
In this appeal, appellants Josue Anaya and Mary Anaya claim that the newborn screening statutes, Neb.Rev.Stat. §§ 71-519 to 71-524 (Supp.2007), violate the free exercise of religion provisions found at article I, § 4, of the Nebraska Constitution. The Anayas also assert that the separate juvenile court of Douglas County erred in ordering that their son, Joel Anaya, be tested pursuant to those statutes and remain in the custody of the State of Nebraska pending the results of the testing. We conclude that the screening statutes are constitutional, and we further conclude that due to insufficient proof, the separate juvenile court did not have jurisdiction under Neb.Rev.Stat. § 43-247(3)(a) (Cum. Supp. 2006) and its orders were a nullity. However, because we conclude that the instant appeal is moot and because the above-stated determination is based on the public interest exception to the mootness doctrine, we dismiss the present appeal.

STATEMENT OF FACTS
The Anayas object to the State's enforcement of the newborn screening statutes with respect to their son, Joel. The newborn screening statutes require that every newborn in Nebraska have a blood test. See §§ 71-519 to 71-524. The screening test is administered to advise *15 parents and physicians whether an infant suffers from any of the following eight metabolic and genetic disorders: congenital primary hypothyroidism, hemoglobinopathies, biotinidase deficiency, congenital adrenal hyperplasia, cystic fibrosis, phenylketonuria, medium-chain acyl co-a dehydrogenase (MCAD) deficiency, and galactosemia. 181 Neb. Admin. Code, ch. 2, § 003 (2005). The conditions are serious and, if untreated, could lead to mental disabilities, loss of hearing, loss of vision, irreversible brain damage, or death. The test involves obtaining a specimen of the infant's blood via a prick to the heel. Pursuant to the regulations established by the Department of Health and Human Services (DHHS), the test is to be performed within 24 to 48 hours of the infant's birth. 181 Neb. Admin. Code. ch. 2, §§ 005.04 and 008 (2005). The evidence indicates that the goal of the screening program is to have every child tested and treated within the first week of his or her life.
Joel was born at home on September 2, 2007. DHHS' newborn screening program staff was alerted to Joel's birth by reviewing registered birth certificates. Once alerted to an out-of-hospital birth, it is the practice of the newborn screening program staff to check the newborn screening data system to determine whether the child has been screened. Although it is not clear from the record when the newborn screening program staff learned of Joel's birth, the record shows that Krystal Baumert, a member of that staff, did such a check on Joel. When she determined that Joel had not been screened, she sent the Anayas a certified letter on September 18 notifying them of the requirement to have Joel submit to the newborn screening test. The letter stated that if the newborn screening program staff did not hear from the Anayas by September 21, it "[would] presume the screening has not been done, and must notify the County Attorney to initiate action pursuant to Nebraska Revised Statute § 71-524." Also on September 18, Baumert followed up the mailing with a telephone call to Mary inquiring whether the Anayas planned to have the screening test performed. Mary informed Baumert that they would not have Joel tested.
The newborn screening program staff notified the State that the Anayas refused to have Joel tested. On October 10, 2007, the State filed a petition for adjudication in the separate juvenile court of Douglas County under § 43-247(3)(a), alleging that Joel lacked proper parental care by reason of the faults or habits of his parents, the Anayas. The petition alleged that the Anayas' failure to submit Joel for the newborn screening test placed him at risk for harm. On that same date, the State also filed a motion for temporary custody pending a hearing on the petition and asked that Joel be placed in the custody of DHHS. Also on that same date, the court issued an ex parte order for immediate custody, finding that there was an immediate and urgent need for out-of-home placement of Joel for his protection and that DHHS had made reasonable efforts to prevent his removal from the family home. On October 11, when Joel was about 5 weeks old, he was removed from the family home and taken into the custody of DHHS.
The court held a formal hearing on October 12, 2007. At the hearing, the court received into evidence, inter alia, an affidavit in support of temporary custody of Joel sworn to by an employee of DHHS, the September 18 letter sent to the Anayas by Baumert, and a report from two DHHS employees to a deputy Douglas County Attorney; the report stated that after observing the Anayas' home environment, the DHHS employees had concluded that Joel appeared to be a healthy 6-week-old infant, and it recommended that Joel be *16 returned to the Anayas' care pending the resolution of the newborn screening issue. The court also heard testimony from Dr. Richard E. Lutz, former chairman of the State of Nebraska Newborn Screening Advisory Committee; one of the DHHS employees who wrote the above-mentioned report; and the Anayas. Dr. Lutz testified that the testing of a child could still be relevant at 6 weeks of age because "[s]ome of these ailments don't become clinically relevant for weeks or months." Dr. Lutz cited MCAD deficiency as an example, stating that a patient may not "present" with that disease until he or she is 2, 6, or 9 months or 2 or 4 years of age. During the hearing, the Anayas stated that the taking of a blood sample from Joel was contrary to their sincerely held religious beliefs, and they unsuccessfully challenged the newborn screening statutes as violative of their right to the free exercise of religion under Neb. Const. art. I, § 4.
At the conclusion of the October 12, 2007, hearing, the court effectively found that Joel was a child as described under § 43-247(3)(a) and determined that Joel was at risk of harm and that it was necessary the newborn screening test be administered immediately. The court directed that Joel be tested and further directed that he remain in the custody of DHHS until the results of the blood test were known. The court later entered a written order memorializing its October 12 oral rulings.
There seems to be no dispute that on October 16, 2007, the results of the test came back negative and that Joel was returned to the Anayas' custody on that same day. The State moved to dismiss the case. On October 17, the court filed an order dismissing the case. The Anayas appeal.

ASSIGNMENTS OF ERROR
The Anayas assign numerous errors. Our disposition of the following two claimed errors resolves the case. The Anayas claim that the separate juvenile court erred when it (1) rejected their claim that the newborn screening statutes infringed upon their rights to the free exercise of religion under Neb. Const. art. I, § 4, and (2) found that the evidence was sufficient to adjudicate Joel as a child under § 43-247(3)(a) and ordered his continued detention after the blood specimen had been obtained.

STANDARDS OF REVIEW
[1-3] Mootness does not prevent appellate jurisdiction. BryanLGH v. Nebraska Dept. of Health & Human Servs., 276 Neb. 596, 755 N.W.2d 807 (2008). But, because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, we have reviewed mootness determinations under the same standard of review as other jurisdictional questions. Id. When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts. In re Interest of Jedidiah P., 267 Neb. 258, 673 N.W.2d 553 (2004).
[4] Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court below. Stenger v. Department of Motor Vehicles, 274 Neb. 819, 743 N.W.2d 758 (2008).

ANALYSIS

This Appeal Will Be Considered Under the Public Interest Exception to the Mootness Doctrine.
Before reaching the legal issues presented, we address the justiciability issue *17 raised by the State. Prior to oral argument, the State moved for summary dismissal of this case on the basis that the case is moot. The State contended that because the screening testing had been accomplished and the separate juvenile court had dismissed the petition, there was no longer a case or controversy for this court to review. The Anayas opposed the State's motion and claimed that the matter remained reviewable because it fell within the public interest exception to the mootness doctrine. We agreed with the Anayas, and we denied the motion.
[5,6] Although not a constitutional prerequisite for jurisdiction, an actual case or controversy is necessary for the exercise of judicial power. BryanLGH v. Nebraska Dept. of Health & Human Servs., supra. A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. Orchard Hill Neighborhood v. Orchard Hill Mercantile, 274 Neb. 154, 738 N.W.2d 820 (2007).
[7,8] Although the Anayas concede that the underlying facts are moot, they nevertheless argue that the case should be reviewed because it falls within the public interest exception to the mootness doctrine. Under the public interest exception to the mootness doctrine, a court may review an otherwise moot case if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination. Green v. Lore, 263 Neb. 496, 640 N.W.2d 673 (2002). When determining whether a case involves a matter of public interest, we consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or a similar problem. Id. After considering these factors, we conclude that this case meets this standard and merits review.
[9] The validity of the newborn screening statutes and the proper statutory method of enforcing the statutes fall squarely within the public interest. Resolution of these issues involves the health and welfare of all children born in the state, an issue of paramount importance to the citizens of this state. Furthermore, this court's resolution of the constitutional and statutory issues in this case will provide guidance for state officials and the juvenile courts on the validity of the newborn screening statutes and the proper method of enforcing these statutes. Finally, the appellants in this case are of childbearing age, so the issues presented in this appeal are capable of recurring in the future, and in addition, similar cases are likely to arise.

Constitutional Question: The Newborn Screening Statutes Do Not Violate Neb. Const. Art. I, § 4.
[10,11] The Anayas claim that the newborn screening statutes violate their rights to the free exercise of religion under article I, § 4, of the Nebraska Constitution. Article I, § 4, provides: "No person shall be compelled to attend, erect or support any place of worship against his consent, and no preference shall be given by law to any religious society, nor shall any interference with the rights of conscience be permitted." A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. Stenger v. Dept. of Motor Vehicles, 274 Neb. 819, 743 N.W.2d 758 (2008). The burden of establishing the unconstitutionality of a statute is on the one attacking its *18 validity. Id. Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court below. Id.
The newborn screening statute § 71-519, challenged by the Anayas, provides:
(1) All infants born in the State of Nebraska shall be screened for phenylketonuria, primary hypothyroidism, biotinidase deficiency, galactosemia, hemoglobinopathies, [MCAD] deficiency, and such other metabolic diseases as [DHHS] may from time to time specify....
(2) ... If a birth is not attended by a physician and the infant does not have a physician, the person registering the birth shall cause such tests to be performed within the period and in the manner prescribed by [DHHS].
In Douglas Cty. v. Anaya, 269 Neb. 552, 694 N.W.2d 601 (2005) (Anaya I), this court addressed and rejected the Anayas' challenge to the newborn screening statutes under the Free Exercise Clause of the federal Constitution. The Anayas argue that the analysis in Anaya I wherein we employed a rational basis review does not control this case. The Anayas rely on Nebraska case law and the Nebraska Constitution in support of their argument. The Anayas direct us to Palmer v. Palmer, 249 Neb. 814, 545 N.W.2d 751 (1996), in which we examined a free exercise issue under the higher "compelling state interest" standard, and to the language of the free exercise provisions of the Nebraska Constitution, both of which the Anayas claim require us to review their state constitutional challenge under a higher degree of scrutiny than challenges under the Free Exercise Clause of the federal Constitution. We are not persuaded by these arguments.
With respect to Palmer, the Anayas rely on our statement therein in which we observed that where the Free Exercise Clause is involved, "a state may abridge religious practices upon a demonstration that some compelling state interest outweighs a complainant's interests in religious freedom." 249 Neb. at 818, 545 N.W.2d at 755. The Anayas assert that Palmer established that the State must demonstrate a higher "compelling interest" before it can interfere with the exercise of religion and that we are bound to follow this standard. The Anayas misperceive the significance of this case.
Our comment in Palmer was a correct statement of the law when made, but is no longer the standard in Nebraska under the free exercise provisions of the Nebraska Constitution. Palmer was filed April 12, 1996. At that time, 42 U.S.C. § 2000bb (1994) of the Religious Freedom Restoration Act was in effect, which legislation purported to restore the "compelling state interest" test after Employment Div., Ore. Dept. of Human Res. v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), had previously announced the "rational basis review" test. However, the Religious Freedom Restoration Act was found unconstitutional in 1997 in City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the year after we decided Palmer. Following City of Boerne, the rational basis review standard again controlled. Thus, subsequent to Palmer, the rational basis review standard described in Smith once again became applicable and we applied it in Anaya I.
[12-14] With respect to the textual argument, we recognize that the language of the state and federal provisions at issue differs; however, we are not prepared to accord these textual differences weight in terms of their constitutional significance. *19 Both the First Amendment's Free Exercise Clause and article I, § 4, of the Nebraska Constitution protect religious freedom and prohibit interference therewith. See, U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof"); Neb. Const. art. I, § 4 ("[n]o person shall be compelled to attend, erect or support any place of worship against his consent, and no preference shall be given by law to any religious society, nor shall any interference with the rights of conscience be permitted"); Palmer v. Palmer, supra. See, also, Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (stating that "[t]he First Amendment declares that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof"). Where state and federal constitutional provisions contain similar language and protect similar rights, we may conclude and indeed have concluded that they should be interpreted in congruence. For example, in State v. Senters, 270 Neb. 19, 699 N.W.2d 810 (2005), we stated that the due process clause of the Nebraska Constitution does not contain a right of privacy broader than that recognized under the federal Constitution. Similarly, in Hamit v. Hamit, 271 Neb. 659, 715 N.W.2d 512 (2006), we extended this principle of congruence to the context of a parent's substantive due process rights because the federal and state Constitutions contain similar due process language and both provide that no person shall be deprived of life, liberty, or property without due process of law. Accordingly, because the free exercise provisions of the Nebraska Constitution protect the same rights as the Free Exercise Clause of the federal Constitution, we will review the newborn screening statutes under the same standardand that standard, rational basis review, was recently applied in Anaya I.
[15-17] As we explained in Anaya I, when reviewing the constitutionality of a law that is challenged based on the Free Exercise Clause, the question is whether the law is neutral and has a general application. See, also, Employment Div., Ore. Dept. of Human Res. v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). A law is neutral and of general applicability "if it does not aim to `infringe upon or restrict practices because of their religious motivation,' and if it does not `in a selective manner impose burdens only on conduct motivated by religious belief.'" San Jose Christian College v. Morgan Hill, 360 F.3d 1024, 1031 (9th Cir.2004), quoting Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). A neutral law of general applicability need not be supported by a compelling governmental interest even though it may have an incidental effect of burdening religion. See Employment Div., Ore. Dept. of Human Res. v. Smith, supra.
[18] In Anaya I, we concluded that § 71-519 was a neutral law of general applicability, noting that because "[§] 71-519 does not contain a system of particularized exemptions that allow some children to be excused from testing ...[, t]he statute does not unlawfully burden the Anayas' right to freely exercise their religion, nor does it unlawfully burden their parental rights." 269 Neb. at 560, 694 N.W.2d at 608. We further concluded in Anaya I that § 71-519 could not be construed as regulating religious-based conduct and that there was no evidence the State had an antireligious purpose in enforcing the law.
[19] After concluding in Anaya I that § 71-519 was a neutral law of general *20 applicability, this court reviewed the evidence presented in the district court to determine whether there was a rational basis for the law. Because the State has an interest in the health and welfare of all children born in Nebraska and the purpose of § 71-519 is to protect such health and welfare, we concluded in Anaya I that this interest is a rational basis for the law and that therefore, § 71-519 does not violate the federal Constitution. The record supports, and we apply, a similar analysis in the instant case. Based on this analysis, we conclude that the newborn screening statutes do not violate the free exercise provisions of the Nebraska Constitution.

Enforcement of the Newborn Screening Statutes Under the Juvenile Code Was Not Warranted, for Lack of Proof of Neglect.
We now turn to the enforcement of the newborn screening statutes in this case. The juvenile code and the newborn screening statutes are relevant to our consideration of this appeal. Section 71-524 contains the procedure in district court for the enforcement of the newborn screening statutes. Section 71-524 states:
In addition to any other remedies which may be available by law, a civil proceeding to enforce section 71-519 may be brought in the district court of the county where the infant is domiciled or found. The attending physician, the hospital or other birthing facility, the Attorney General, or the county attorney of the county where the infant is domiciled or found may institute such proceedings as are necessary to enforce such section.... A hearing on any action brought pursuant to this section shall be held within seventy-two hours of the filing of such action, and a decision shall be rendered by the court within twenty-four hours of the close of the hearing.
As provided for by the Legislature, § 71-524 is the primary method for enforcing the newborn screening statutes via a civil proceeding in district court. In this case, however, the State enforced the newborn screening statutes in the separate juvenile court through § 43-247(3)(a) of the juvenile code. Section 43-247 states:
The juvenile court shall have exclusive original jurisdiction as to[:]
...
(3) [a]ny juvenile (a) ... who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile; whose parent, guardian, or custodian is unable to provide or neglects or refuses to provide special care made necessary by the mental condition of the juvenile; or who is in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such juvenile....
[20] Although there is tension between the language of § 71-524, which instructs that enforcement of the newborn screening statutes be sought in district court, and the exclusivity provision of § 43-247(3)(a), regarding juvenile court jurisdiction, we determine that both statutes are relevant to the enforcement of the newborn screening scheme. In this regard, we have stated that when engaging in statutory interpretation, our objective is to harmonize the language of conflicting statutes. See Hoiengs v. County of Adams, 254 Neb. 64, 574 N.W.2d 498 (1998) (stating that where it is possible to harmonize apparently conflicting statutes, such is to be done).
*21 [21] By its terms, in addition to the specific and therefore preferred remedy in district court, § 71-524 states that the newborn screening statutes may also be enforced through "other remedies which may be available by law." Under the proper set of proven facts, enforcement through the neglect provisions of the juvenile code may be one such "other remedy." The goals of the juvenile code are to ensure the rights of all juveniles, to provide them a safe and stable living environment, and to develop their capacities for a healthy personality, physical well-being, and useful citizenship. See Neb.Rev.Stat. § 43-246 (Reissue 2004). A proceeding brought under the juvenile code alleging and establishing a failure to test along with other indicators of neglect may be warranted and would be compatible with § 71-524. Here, however, the State did not meet its burden of proof to acquire jurisdiction to proceed in juvenile court under § 43-247(3)(a), and thus, its enforcement effort under the juvenile code ought not to have succeeded.
[22-24] At the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence. In re Interest of Heather R. et al., 269 Neb. 653, 694 N.W.2d 659 (2005). The court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. In re Interest of Brian B. et al., 268 Neb. 870, 689 N.W.2d 184 (2004). If the pleadings and evidence at the adjudication hearing do not justify a juvenile court's acquiring jurisdiction of a child, then the juvenile court has no jurisdiction and any subsequent orders of the court are a nullity. See, In re Interest of D.M.B., 240 Neb. 349, 481 N.W.2d 905 (1992); In re Interest of Joelyann H., 6 Neb.App. 472, 574 N.W.2d 185 (1998).
[25, 26] While the State need not prove that the juvenile has actually suffered physical harm, our cases make clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. See, e.g., In re Interest of Brianna B. & Shelby B., 9 Neb.App. 529, 614 N.W.2d 790 (2000) (holding that parent's alleged alcoholism was not sufficient evidence for adjudication under § 43-247(3)(a) when there was no evidence that such drinking caused harm or resulted in improper care of children). Here, the State did not meet its burden of proof as required under § 43-247(3)(a). Nothing presented at the October 12, 2007, hearing was tantamount to proof that the Anayas had neglected Joel. On the contrary, the evidence at the October 12 hearing established that during a DHHS home visit, the staff observed that Joel's needs were being met and that he was a healthy 6-week-old baby. Although failure to comply with the newborn screening statutes may be relevant, along with other facts, to a determination that a child was neglected as that term is understood under § 43-247(3)(a), the fact of failure to test under the newborn screening statutes, standing alone, does not establish neglect.
Our review of the record convinces us that the State failed to establish that this was an emergency situation, that harm was imminent, or that continued detention of Joel was warranted. At 5 weeks old, Joel was well past the first 24- to 48-hour emergency time period set forth in the newborn screening statutes and regulations. The only evidence presented at the hearing with respect to the need for testing at 5 or 6 weeks of age was the testimony of Dr. Lutz to the effect that the testing was still relevant for a 6-week-old infant because some of the conditions can still be *22 detected. The record suggests that testing can still identify beneficial information after the first week of life; however, this fact alone does not prove that without immediate testing, a 5-week-old infant is at immediate risk of harm warranting jurisdiction under § 43-247(3)(a) or that such an infant's continued detention after a blood specimen is obtained is necessary. There simply was no legal, factual, or logical basis to keep Joel in State custody after the blood sample was taken.
Because the State failed to meet its burden of proof under § 43-247(3)(a), the separate juvenile court did not acquire jurisdiction over Joel and all orders entered by the separate juvenile court were a nullity.

CONCLUSION
We conclude that the newborn screening statutes do not violate Nebraska's free exercise of religion provisions under Neb. Const. art. I, § 4. With respect to enforcement, we conclude that the State did not meet its burden of proof under § 43-247(3)(a), that the juvenile court did not acquire jurisdiction over Joel, and that its orders for testing and continued detention were a nullity. However, because we have concluded that the instant appeal is moot and because the above-stated determinations are made based on the public interest exception to the mootness doctrine, we dismiss the present appeal.
APPEAL DISMISSED.
HEAVICAN, C.J., not participating.