In conclusion, we agree with the district court that insomuch as § 29-4106(2) forfeits Shepard's past and future good time and recalculates his parole eligibility and mandatory discharge dates without regard to any good time, it violates the constitutional prohibitions against ex post facto laws. Shepard, at the time of his crimes, expected to automatically incur good time simply through good conduct, and he expected to have his mandatory discharge date calculated upon his maximum sentence minus good time. Section 29-4106(2), by allowing for forfeiture of more good time than could have been forfeited before and by allowing for forfeiture based on conduct that is something less than flagrant and serious misconduct—indeed, conduct not even contemplated at the time of Shepard's crimes—substantially altered the punitive consequences attached to his crimes.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

Affirmed.

———————

In re Interest of Nathaniel M., a child
under 18 years of age.
Nebraska Department of Health and Human Services,
appellant, v. State of Nebraska and
Nathaniel M., appellees.
___ N.W.2d ___

Filed November 7, 2014.    Nos. S-13-1066 through S-13-1068.

1. **Moot Question: Jurisdiction: Appeal and Error.** Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.
2. ____: ____: ____. When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts.
3. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.

4. **Moot Question: Words and Phrases.** A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.

5. **Moot Question.** The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.

6. **Moot Question: Appeal and Error.** An appellate court may choose to review an otherwise moot case under the public interest exception if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination. This exception requires a consideration of the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem.

Appeals from the County Court for Madison County: Ross A. Stoffer, Judge. Appeals dismissed.

Neleigh N. Boyer, Special Assistant Attorney General, for appellant.

Gail Collins, Deputy Madison County Attorney, for appellee State of Nebraska.

Brad Ewalt, of Ewalt Law Office, for appellee Nathaniel M.

Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Per Curiam.

In these consolidated appeals, the Nebraska Department of Health and Human Services (the Department) appeals from orders of the county court for Madison County, sitting as a juvenile court, which committed a 13-year-old juvenile to the Youth Rehabilitation and Treatment Center (YRTC) in Kearney, Nebraska. At issue is whether the court had the authority under Neb. Rev. Stat. § 43-286(1)(b)(i) (Supp. 2013) to so commit the juvenile when he was under the age of 14 years. The Office of Juvenile Services (OJS) initially refused to accept the juvenile, but was ordered by the court to do so. OJS then accepted him but quickly discharged him, causing the appeals before us to become moot. The Department asks us to decide the statutory issue presented under the public

interest exception to the doctrine of mootness. For the reasons discussed, we decline to do so and dismiss the appeals.

## BACKGROUND

Nathaniel M., born in May 2000, is the subject of three juvenile proceedings in the county court for Madison County. The first, which is our case No. S-13-1066, originated on June 29, 2012, with the filing of a petition alleging that Nathaniel was a juvenile as defined by Neb. Rev. Stat. § 43-247(1) and (3)(b) (Reissue 2008), based in part on allegations of assault and criminal mischief. Nathaniel admitted the allegations in the petition, and at an August 30 disposition hearing, he was committed to OJS for placement at the foster or group home level.

Case No. S-13-1067 originated on May 8, 2013, when a petition was filed in York County, Nebraska, alleging that Nathaniel stole property worth more than $1,500 and operated another's vehicle without consent. Nathaniel admitted to the theft, and the other allegation was dismissed. The case was then transferred to Madison County. On July 29, Nathaniel was committed to OJS.

Case No. S-13-1068 originated on September 19, 2013, when a petition was filed in Madison County alleging Nathaniel exercised control over the movable property of another worth $500 or more with the intent to deprive them thereof. The petition was later amended to add allegations of theft by receiving stolen property and criminal mischief. A day after this petition was filed, the State moved for a higher level of placement for Nathaniel with respect to the two prior pending juvenile cases.

A hearing on all three cases was held on November 12, 2013. In the first two cases, the hearing addressed the State's motion for a higher level of placement. In the third case, the hearing was a pretrial hearing. At this hearing, Nathaniel admitted to certain allegations in the third case. A caseworker employed by the Department testified that Nathaniel was a flight risk, that he posed a risk to himself and others, that no disposition less restrictive than commitment to the YRTC would suffice to meet his needs, and that such commitment was in Nathaniel's

best interests. The parties stipulated that he should be placed at the YRTC in Kearney in all three cases.

The court placed Nathaniel on intensive supervised probation and ordered that he be placed at the YRTC. The court explained its disposition to Nathaniel as follows:

> Basically it means even though I've told you you're on probation until you're 19, what's going to happen is . . . that you're going to go to Kearney, and you're going to be expected to complete the program there. And they will keep you there until you do complete that program.

At the time of this disposition, Nathaniel was less than 14 years old.

Two days later, the prosecutor filed a motion for change of disposition in each of the three cases. At a hearing on these motions, at which representatives of the Department were present, the prosecutor advised the court that the YRTC refused to accept Nathaniel because of his age and asked the court to rescind its prior order placing him at the YRTC in accordance with a stipulation entered into by the parties.

The court refused to change its disposition. It explained that it construed § 43-286(1)(b)(i) to authorize the commitment of a juvenile under the age of 14 to a YRTC if the juvenile was committed to OJS prior to July 1, 2013; the juvenile had subsequently committed another offense; and the interests of the juvenile and the welfare of the community demanded such commitment. The court found that Nathaniel met these criteria. And the court further explained:

> And I'm just not going to stand for the fact that the [D]epartment [and OJS are] able to say, we don't agree with you, and without appealing they refuse to take the child under my order.
>
> When the court has entered an order . . . the court expects that order to be followed unless there is an appeal or something else happens. And so if the [D]epartment wants to appeal that, [it] certainly can appeal it. And, in fact, if the juvenile is not taken back into the [YRTC], I'm ordering that the director . . . at the [YRTC] at Kearney, that that person appear here in the court on November the 19th at ten o'clock to show cause why

they should not be held in contempt of court for refusing to follow my order.

I mean . . . if I ordered anybody else to do something and they refused to do it, I wouldn't just let them say, I disagree with your interpretation of the law and so I'm not going to do it. And I don't think that the [YRTC] at Kearney or the [D]epartment should be able to do that either.

There are proper procedures for challenging a court's order, and just saying we're not going to do it and we're not going to take the kid is not one of them. . . . I've ordered them to take him back.

If they don't do it, then they're ordered to be here on the 19th and explain why they're not taking him back. And if they want to, the 30 days has not yet run, they can appeal, but that's the proper way to do it, not just to say we're going to refuse to do what you've told us to do.

I mean, how would that be any different than if I ordered the [D]epartment to pay for something and [it says], well, [it] interpret[s] the law differently than you do, [it is] not going to do it? I mean, there's plenty of cases out there where the [D]epartment has disagreed with the court, and [it has] appealed, and sometimes the Supreme Court finds for the [D]epartment. That's the proper way to do it, not just to refuse to do it.

. . . .

The [D]epartment just basically says that [it] disagree[s] with the way you read the law and so [it is] just not going to follow it. And I don't care if it's [the Department's] attorney or whoever. I mean, attorneys can disagree with me on my interpretation of the law, but it's my job to interpret the law. And if they disagree with me, there are ways that they can go about doing that, not just say, we're not going to follow what you said. I mean, if that is allowed, what power does the court have at that point?

The records do not reflect whether the referenced contempt proceedings were held, although counsel for the Department mentioned such proceedings during oral argument before this

court. The Department filed notices of appeal in each case on December 9, 2013.

Nathaniel was ultimately accepted by the YRTC. The record indicates, however, that the court was almost immediately advised by the YRTC that Nathaniel would be discharged in 60 days.[1] At a reentry hearing held on January 9, 2014, the court left Nathaniel's probation in effect and placed him at a group home upon his discharge from the YRTC. The parties agree that Nathaniel was discharged from the YRTC after these appeals were filed.

We moved these cases to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[2]

## ASSIGNMENTS OF ERROR

The Department assigns that the juvenile court erred in (1) placing Nathaniel at a YRTC when he was less than 14 years old and (2) overruling its motions to change that disposition.

## STANDARD OF REVIEW

[1,2] Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions. When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts.[3]

[3] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[4]

## ANALYSIS

The Department contends that the juvenile court lacked authority to commit Nathaniel to the YRTC, because Neb. Rev.

---

[1]  See, generally, § 43-286(1)(b)(ii).

[2]  Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[3]  *In re Interest of Anaya*, 276 Neb. 825, 758 N.W.2d 10 (2008).

[4]  *DMK Biodiesel v. McCoy*, 285 Neb. 974, 830 N.W.2d 490 (2013); *Mutual of Omaha Bank v. Murante*, 285 Neb. 747, 829 N.W.2d 676 (2013).

Stat. § 43-251.01(4) (Supp. 2013) provides: "A juvenile under the age of fourteen years shall not be placed with or committed to a youth rehabilitation and treatment center[.]" But the juvenile court found that this general prohibition was subordinated to the specific provisions of § 43-286(1)(b)(i), which apply to "all juveniles committed to [OJS] prior to July 1, 2013." Section 43-286(1)(b)(i) prohibits placement of a juvenile under the age of 14 years at a YRTC "unless he or she has violated the terms of probation or has committed an additional offense and the court finds that the interests of the juvenile and the welfare of the community demand his or her commitment." The juvenile court reasoned that Nathaniel was originally committed to OJS in the first of these three juvenile cases on August 30, 2012, that he subsequently committed another offense, and that his best interests and the welfare of the community demanded his confinement.

Both §§ 43-251.01(4) and 43-286(1)(b)(i) are part of the Nebraska Juvenile Code, which was substantially amended by the Nebraska Legislature in 2013.[5] As we noted in *In re Interest of Marcella G*.,[6] L.B. 561 authorized a pilot project administered by the Office of Probation Administration to be expanded statewide in a three-step, phase-in process beginning July 1, 2013. As a result of this legislation, the Office of Probation Administration has taken over the previous duties of OJS with respect to community supervision and parole of juvenile law violators and evaluations of such juveniles, while the role of OJS is now limited to operating YRTC's and taking care and custody of juveniles placed at those facilities.[7]

[4,5] These cases became moot by OJS' decision to discharge Nathaniel from the YRTC shortly after his arrival there. A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.[8] The central question in

---

[5] See 2013 Neb. Laws, L.B. 561.

[6] *In re Interest of Marcella G*., 287 Neb. 566, 847 N.W.2d 276 (2014).

[7] See *id*.

[8] *Professional Firefighters Assn*. *v. City of Omaha*, 282 Neb. 200, 803 N.W.2d 17 (2011).

a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.[9] Nathanial's discharge from the YRTC is clearly such a change in circumstances.

[6] Acknowledging that the cases are moot, the Department asks us to decide them under the public interest exception to the mootness doctrine. An appellate court may choose to review an otherwise moot case under the public interest exception if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination.[10] This exception requires a consideration of the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem.[11]

We focus here on the third element of the test. Like Neb. Rev. Stat. § 43-247.02(3) (Supp. 2013), which we examined in *In re Interest of Marcella G*., § 43-286(1)(b)(i) is part of the process of phasing in the provisions of L.B. 561. It applies *only* to juveniles committed to OJS prior to July 1, 2013. With the passage of time, there will necessarily be fewer juveniles committed to OJS prior to July 1, 2013, who are under the age of 14 years and potentially subject to commitment to a YRTC pursuant to § 43-286(1)(b)(i). At some point, perhaps in the not-too-distant future, there will be none. During oral argument, the Department acknowledged that its records would reflect the date of birth and date of commitment of each juvenile currently committed to OJS and that based on such records, it should know precisely how many juveniles could be affected by the interpretation of § 43-286(1)(b)(i), which it challenges in these cases. But it has not provided this court with that information. Instead, in its response to our show

---

[9] *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012); *In re 2007 Appropriations of Niobrara River Waters*, 278 Neb. 137, 768 N.W.2d 420 (2009).

[10] *In re Interest of Taylor W*., 276 Neb. 679, 757 N.W.2d 1 (2008); *In re Applications of Koch*, 274 Neb. 96, 736 N.W.2d 716 (2007).

[11] *Id*.

cause order, the Department states only that there are "several other juveniles who were committed to [OJS] prior to July 1, 2013, who are under the age of 14 years." Thus, we can only speculate regarding the probability of a future recurrence of the issue presented in these appeals. It appears, however, that such probability is slight.

And in the increasingly unlikely event that the issue did recur, it would not necessarily escape appellate review, as the Department contends. These cases are moot because OJS made them so by discharging Nathaniel from the YRTC shortly after he arrived there. OJS is a statutorily created office within the Department to which a court may commit a juvenile for treatment, including supervision, care, confinement, and rehabilitative services.[12] The record suggests, and counsel for the Department confirmed at oral argument, that OJS discharged Nathaniel from the YRTC not because he completed a treatment program there, but at least in part because OJS and the Department disagreed with the juvenile court's interpretation of the law regarding its authority to commit Nathaniel to the YRTC—the precise issue which the Department asks us to decide in these appeals. Remarkably, in urging us to reach the merits of these appeals, the Department states in its brief:

> As the law stands now, should a judge enter an order committing one of these juveniles under the age of fourteen to a YRTC, the YRTC will act, as it did in these cases, and discharge the juvenile almost immediately because the statutes do not allow for such a commitment. At the current time, the only way the YRTC can comply with the law while following a court order committing a juvenile under the age of fourteen is to accept the juvenile into the YRTC and then discharge the juvenile promptly.[13]

That is not how the law stands now. It is apparent that the stern but appropriate admonition of the juvenile court which

---

[12] Neb. Rev. Stat. §§ 43-403(2) and (7) (Reissue 2008) and 43-404(1) (Supp. 2013).

[13] Brief for appellant at 20.

we have quoted above has not disabused the Department of the notion that it is free to disregard a court order with which it disagrees. So we add our own admonition: In the seemingly unlikely event that the circumstances presented here should arise in the future, the Department, OJS, and the YRTC can, and indeed must, comply with the juvenile court's order, and it is their statutory duty to provide appropriate treatment to a juvenile committed to their care and custody unless and until an appellate court reverses or modifies the commitment order. Statutory interpretation and construction is a function of the judicial branch, not the executive branch.

Based upon the manner in which these cases became moot, and the distinct possibility that the issue presented is one of last impression, we decline to reach the merits of these appeals under the public interest exception to the doctrine of mootness.

## CONCLUSION

For the foregoing reasons, we lack appellate jurisdiction over these appeals because the issue presented is moot. Accordingly, the appeals are dismissed.

APPEALS DISMISSED.

HEAVICAN, C.J., not participating.

––––––––––––––––

CURTIS CHARLES HUSKEY, APPELLANT AND CROSS-APPELLEE, V.
DEITRA MARIE HUSKEY, NOW KNOWN AS DEITRA MARIE
OSTERFOSS, APPELLEE AND CROSS-APPELLANT.

___ N.W.2d ___

Filed November 7, 2014.    No. S-13-1140.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.
2. **Jurisdiction: Appeal and Error.** It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
3. **Constitutional Law: Jurisdiction: Appeal and Error.** Except in those cases wherein original jurisdiction is specially conferred by Neb. Const. art. V, § 2, the Nebraska Supreme Court exercises appellate jurisdiction, and such appellate jurisdiction can be conferred only in the manner provided by statute.
4. **Appeal and Error.** The right of appeal in Nebraska is purely statutory.